UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RONALD HINKLE,**<br><br>Defendant. | Case No. 18-CR-00009 (CKK) |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Mr. Hinkle has pled guilty to offenses stemming from his lengthy distribution of significant quantities of drugs, while armed with multiple firearms. His conduct was dangerous, given both the deadly and addictive nature of the drugs he dealt as well as the deadly weapons he carried. At the same time, he has been on pre-trial release for more than a year, during which he has performed remarkably well. He has obtained a commercial driver's license and is currently employed, meaningfully contributing to our community. The Government requests that the Court sentence Mr. Hinkle to the bottom of the agreed-upon range: 72 months' imprisonment, to be followed by five years of supervised release. The Government also requests that Mr. Hinkle be sentenced to twelve months of home detention with education and work privileges following any term of imprisonment, as well as a requirement that he complete 200 hours of community service while on supervision.

### BACKGROUND

*The 2015 Distributions*

In the summer of 2015, a cooperating witness (CW) purchased 125 grams of cocaine for $5,500 from Mr. Hinkle on two occasions (July 30 and August 19). On each occasion, the CW text messaged the defendant to set up the transaction, and they conducted each transaction in a different car rented by the defendant. The CW would drive to a specified location, exit the CW's car, and

enter the defendant's car to conduct the transaction. Each buy was recorded on camera worn by the CW, and each buy was witnessed by multiple law enforcement agents. The CW identified the defendant, rental car records from the first buy implicate the defendant, and an agent identified the defendant during the second buy. As a result of that investigation, the government obtained an indictment on January 16, 2018, and a warrant was issued for the defendant's arrest.

### *The 2018 Arrest and Search Warrant*

On February 21, 2018, around 7:00 a.m., agents began conducting surveillance on a Chrysler 300 bearing Maryland tags 4CW8934 in the 2500 block of R Street Southeast, Washington, D.C., based on information that the defendant had rented the vehicle. Specifically, agents knew that the defendant had previously used rental vehicles, based on the 2015 controlled purchases. Agents also knew that the defendant used Hertz to rent the vehicles. Thus, agents inquired through Hertz whether the defendant was using rental vehicles again. Once confirmed, agents ran the license plate tags through the License Plate Reader (LPR) and on or about February of 2018, learned that the LPR hit in the area of 2515 R Street S.E., Washington, D.C. As a result of the LPR hit, agents surveilled the area to see if they could spot the vehicle. They spotted the vehicle, by happenstance, on February 21, 2018.

Around 10:50 a.m., agents observed the defendant leave the front door of a three-story apartment building at 2515 R Street S.E. and enter the Chrysler 300. Agents immediately surrounded the car and placed him under arrest. The agents recovered 84 grams of crack cocaine in plastic bags from the defendant's waistband in a search incident to his arrest. They recovered an additional 8 grams of cocaine and 30 grams of heroin from the car. Agents also recovered $170 and a set of apartment keys from the defendant.

Based on this recovery, agents contacted the leasing manager of 2515 R Street S.E. to

determine whether the defendant used or lived in any of the building's units. The leasing manager did not recognize the defendant's name. When shown a photograph of the defendant, however, the manager stated that the defendant lived in unit #322 and the manager knew him as "Ronald Archer." The manager explained that "Ronald Archer" was the formal lessee of the apartment, but that the defendant had at least once paid the rent via money order. Based on that information, agents obtained a search warrant for unit #322.

On that same day, agents used the key obtained from the defendant to enter the apartment. The apartment was a one-bedroom, one-bath unit, with only a few items of furniture. Law enforcement recovered seven one-kilogram packages of cocaine from the bedroom, kitchen, hallway closet, and bedroom closet. They also recovered three firearms: one from underneath the living room couch (one bullet in the chamber), and two from the bedroom closet (both still in the gun box with live rounds of ammunition). They recovered over three kilograms of cocaine in various large Ziplocs, approximately 100 grams of crack cocaine, and 25 grams of heroin. No one else was present in the apartment.

The agents also recovered numerous items indicative of drug distribution (including cooking pots, baking soda boxes, and medical masks), suspected counterfeit money, cell phones, empty kilogram wrappers, an auto repair estimate made out to Ronald Hinkle, and two pieces of mail matter. One piece of mail matter was addressed to Ronald Hinkle. The remaining piece was addressed to Ronald Archer, but it was from the apartment building. In total, the agents recovered approximately 10 kilograms of cocaine, 191 grams of crack cocaine, 55 grams of heroin, and three firearms between the defendant's arrest and the apartment search, contraband worth hundreds of thousands of dollars.

The firearms were sent to the Federal Bureau of Investigation (FBI) laboratory in Quantico,

Virginia for testing. On November 19, 2018, the lab provided its results, indicating that on two of the firearms (specifically, the Ruger pistol found under the couch and the Glock pistol found in the closet), the defendant's DNA was identified.

On March 1, 2018, the grand jury returned a superseding indictment, alleging: two counts of distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); three counts of possessing with intent to distribute five or more kilograms of cocaine, 28 grams or more of cocaine base, and a detectable amount of heroin, respectively, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(B)(iii), and (b)(1)(C); and one count of using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).

Defense counsel filed multiple motions in this case, including a motion to suppress. The parties began but did not complete a hearing on the motion to suppress on March 23, 2022. On August 2, 2023, following lengthy negotiations between the parties, Mr. Hinkle pled guilty to one count of Possessing a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1), pursuant to a Rule 11(c)(1)(C) agreement. As part of that agreement, the Government agreed to dismiss all remaining charges in the March 1, 2018 Indictment. The parties agreed to a sentence of six to seven-and-a-half years' imprisonment (seventy-two to ninety months), followed by five years of supervised release. The parties also agreed that Mr. Hinkle would be sentenced to a period of home detention with education and work privileges to follow any term of supervised release, as well as 200 hours of community service. Sentencing is scheduled for January 12, 2024.

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing."

543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> > > (i) issued by the Sentencing Commission . . .; and
> > > (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
> > (A) issued by the Sentencing Commission . . . and
> > (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## THE APPLICABLE SENTENCING GUIDELINES

There are no disputes between the parties pertaining to the applicable guidelines range, which is sixty months of imprisonment, pursuant to U.S.S.G. § 2K2.4(b). As set forth above, however, the parties have agreed to a sentence of seventy-two to ninety months in prison.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government respectfully requests that the Court sentence the defendant to 72 months' imprisonment, to be followed by five years of supervised release. The Government also requests that Mr. Hinkle be sentenced to twelve months of home detention with education and work privileges following any term of imprisonment, as well as 200 hours of community service.

### A. Nature and Circumstances of the Offense

The nature and circumstances of Mr. Hinkle's offenses are undeniably serious. Mr. Hinkle dealt significant quantities of drugs, while armed, for an extended period of time. Mr. Hinkle's behavior was not an aberration. This was his occupation for multiple years.

Drugs are addictive and deadly, and in dealing significant quantities of these drugs, including cocaine, cocaine base, and heroin, Mr. Hinkle—who has no history of substance abuse—was preying on members of our community suffering from addiction. And drug distribution is an inherently violent crime. For obvious reasons, drug dealers cannot rely on law enforcement or the legal system, so they must defend themselves and resolve disputes through the actual or threatened use lethal force. Given that they operate outside the protection of law, drug dealers are prime targets for robberies, which heightens the risk of lethal force being used by everyone involved. It is for this reason that Mr. Hinkle possessed multiple firearms in furtherance of his drug trafficking.

He was found in possession of three different loaded firearms. The Government acknowledges that it has no evidence that Mr. Hinkle used these firearms. But his conduct over many years posed an undeniable threat to our community.

### B. The History and Characteristics of the Defendant.

Unlike many defendants who appear before this Court, based on the pre-trial services report in this matter, Mr. Hinkle appears to have had a largely happy upbringing. He enjoyed the support of his parents. He does not appear to have struggled with substance abuse. He graduated high school and even attended some college. Despite this, Mr. Hinkle appears to have chosen to deal drugs rather than contribute meaningfully to society. He was first convicted of possession of a controlled substance in 1998. He was next convicted in 2002 in relation to his distribution of cocaine and marijuana. And he was convicted a third time in 2003 for his distribution of cocaine. None of these convictions or periods of probation dissuaded him from continuing to engage in this behavior.

It is somewhat difficult to square Mr. Hinkle's past with the Mr. Hinkle who appears before the Court. Mr. Hinkle has performed remarkably well on supervision. Mr. Hinkle was released from pre-trial detention on October 13, 2022. Since then he has requested and received modifications to allow him to contribute to the community. He has never once failed to abide by his conditions of release and has followed all of Pre-trial Services' requests. While on pre-trial release, he obtained his commercial driver's license in August 2023. He has since become employed by the D.C. Department of Public Works. He works—sometimes double shifts and overtime—collecting leaves and otherwise bettering our community.

### C. The Need for the Sentence Imposed

A sentence of seventy-two months' imprisonment is sufficient but no greater than

7

necessary to accomplish the goals of sentencing. Mr. Hinkle's offenses are no doubt serious. But his performance on supervision and commitment to self-improvement are indisputable. The Government agreed to the proposed sentence in light of the age of these offenses and Mr. Hinkle's markedly positive performance on supervision. He has been positively contributing to our community since he was permitted to do so. In light of that, it is difficult to justify an additional significant term of imprisonment. This is particularly the case, because the Government is requesting that Mr. Hinkle serve an additional period of home detention following his release from prison, which will continue to allow Mr. Hinkle to contribute to the community while ensuring his transition back to society is smooth and supervised.

## **CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the Court sentence Mr. Hinkle to seventy-two months' imprisonment, followed by five years' supervised release. The Government also requests that following any term of incarceration, Mr. Hinkle be placed on home confinement with work and education privileges for twelve months, and that Mr. Hinkle be required to complete 200 hours of community service.

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

Dated: November 16, 2023     By:     /s/ Cameron A. Tepfer
Cameron A. Tepfer
D.C. Bar No. 1660476
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street NW
Washington, D.C. 20530
(202) 258-3515
Cameron.Tepfer@usdoj.gov