**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Criminal No.  18 - 09  (CKK)** |
| | : | **Sentencing:    April 25, 2024** |
| | : | |
| **RONALD HINKLE** | : | |
| | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant, Ronald Hinkle, through undersigned counsel,  respectfully requests that the Court accept the Rule 11(c)(1)(C) plea agreement, and sentence him to the bottom of the agreed-upon range.  However, recognizing that the 72 month bottom of the agreed-upon range will result in the defendant being subject to about 5 months of further prison time, which will cause him to lose his job and other important job opportunities, the defendant is making the unusual request for the Court to fashion a sentence that would not require him to serve any further time in prison.[1]  As the government correctly noted in its sentencing memorandum, and as counsel discusses more fully below, Mr. Hinkle's adjustment and successes since being placed on house arrest have been remarkable.  Notwithstanding the unusual nature of the defendant's request, it does make sense, as it would recognize his remarkable accomplishments.  At the same time it will avoid a short prison sentence that will undoubtedly set his re-entry efforts back considerably, and will cause him to lose his best opportunity for permanent employment in a position with the Department of Public Works (DPW).  Counsel is submitting several letters on Mr. Hinkle's behalf, including a very favorable letter and evaluation from the DPW.

---

[1]  Counsel suggests that the Court might sentence him to 65 months, if possible, effectively giving him credit for seven (7) months in part because he was on "house arrest" for nearly a year and the BOP will not give him credit for that time.  Counsel would note that the Bureau of Prisons designation and computation section informed counsel that under BOP policy Mr. Hinkle will not get any custody credit for his time on "house arrest".  While counsel has not found any authority for the Court to impose a sentence below the agreed-upon range, counsel nonetheless making this request with the hope that the Court has encountered the issue and is aware of some authority because the reasoning behind the request makes a great deal of sense.

- 2 -

## FACTUAL AND PROCEDURAL  BACKGROUND
## AND RULE 11(c)(1)(C) PLEA AGREEMENT :

On or about July 30, 2015 and August 19, 2015, the defendant distributed quantities of cocaine to a confidential source ("CS") during a controlled buy operation. Thereafter, the defendant was not involved in any further transactions with the CS, and there were no further investigative leads relating to the defendant. In or about January 2018, based on the two undercover transactions in 2015, the government obtained an indictment charging the defendant with two counts of unlawful distribution of a detectable amount of cocaine in violation of 21 U.S.C. 841 (a)(1) and (b)(1)(C) [Case No. 18-cr-009].  On the same date an arrest warrant for the defendant was signed by Magistrate Judge Deborah Robinson.

Detective Brown and the members of the FBI led Safe Streets Task Force made efforts to locate the defendant.  In or about February 2018, Detective Scott Brown developed information suggesting that the defendant was operating a Chrysler 300, bearing Maryland tags 4CW8934. On February 21, 2018, Detective Brown located the vehicle parked unoccupied across the street from 2515 R Street, S.E., Washington, D.C.   Law enforcement maintained surveillance on the vehicle, and at approximately 10:50 A.M., the officers observed the defendant exit 2515 R Street, S.E., walk directly to the parked Chrysler 300, and enter the vehicle.  The defendant was approached and placed under arrest.  A search of the defendant and the vehicle revealed a plastic bag with 28 small bags of white rock substance and other small bags with white powder.

Following the defendant's arrest, officers contacted the resident manager of 2515 R Street, S.E., who confirmed that she recognized the defendant, and that on at least one occasion he had paid the rent for apartment 322.  However, she thought his name was Ronald Archer because the lease and the payment were in that name. [2]   Thereafter, Detective Scott Brown

---

[2]    The records in the resident manager's office showed that the rental application, the lease, and the driver's license maintained with the lease information were all in the name of Ronald Archer.  Based on the driver's license photo and date of birth, Mr. Archer was considerably older than the defendant.

- 3 -

obtained a D.C. Superior Court search warrant for apartment 322 at 2515 R Street, S.E.,

Washington, D.C.   During the search of apartment 322 the police seized kilogram quantities of

cocaine, 191 grams of crack cocaine, 55 grams of heroin, and three firearms.  On or about

March 1, 2018, the government obtained a superseding indictment adding drug and firearm

counts stemming from the seizures of evidence during the February 21, 2018 arrest of defendant

and the search of 2515 R Street, S.E., apartment 322.

      The defendant was initially represented by Jon Norris, he later had to withdraw as

defendant's counsel.  Undersigned counsel was then appointed to represent Mr. Hinkle, and was

given time to get up to speed in the case.  Unfortunately, shortly thereafter, the COVID pandemic

struck and the case was delayed.  Eventually, counsel filed motions on the defendant's behalf,

including a Motion To Suppress Tangible Evidence.  The court conducted an evidentiary hearing

on the motion to suppress, but a defense witness became unavailable due to medical issues before

the hearing was  concluded.  Shortly after the witness became available, the parties were

informed that Judge Sullivan was entering an Order granting a bond motion that the Court had

reserved judgment on months earlier, and that the case was being transferred to Your Honor.  The

parties continued to engage in further plea negotiations, and eventually a plea agreement was

reached.

      The defendant agreed to plead guilty to Counts Six of the indictment - Possession of a

Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. 924(c). Pursuant

to Rule  11(c)(1)(c), the parties agreed to recommend a sentencing range of 72 to 90 months,

followed by a term of supervised release, including a period of home detention with education

and work privileges, and 200 hours of community service.  The parties agree that the proposed

sentence is sufficient, but not greater than necessary, to effectuate the goals of sentencing in this

case under 18 U.S.C. § 3553.  Sentencing is currently scheduled for April 25, 2024.

– 4 –

**PSR GUIDELINE CALCULATION & SENTENCING  RECOMMENDATIONS:**

There are no disputes for the Court to resolve regarding the Pre-sentence Report ("PSR"). The guideline range for the offense is the statutory minimum - 60 months.  [See PSR ¶ 29].  Mr. Hinkle has no juvenile record, and his criminal history category is III.  [See PSR ¶ 30, 38] Mr. Hinkle's time in jail during the pendency of the case has already satisfied the statutory minimum, and the guideline range for the offense.  As the Court is aware, for any sentence greater than one year, a defendant/inmate is entitled to receive 54 days credit towards the service of the sentence for each year. *See*, 18 U.S.C. 3624(b)  Moreover, the district court may properly consider the potential impact of good-time credits when tailoring a sentence.  See, *United States v. Fowler*, 948 F.3d 663, 670 (4th Cir. 2020)   Thus, for a 60 month sentence, the defendant is entitled to 270 days (9 months) credit, and the actual jail or prison time would be 51 months. Since Mr. Hinkle served nearly 56 months in jail before being placed on "house arrest", he has served the equivalent of more than the statutory minimum.  In fact, considering good time credits, Mr. Hinkle has served nearly the equivalent of a 66 month sentence. [3]

While the parties agreed to a sentencing range of 72 to 96 months, and the government is recommending 72 months, the defendant is making the unusual request for a sentence that will not require further prison time, which counsel calculates to be approximately a 66 month sentence (if such a sentence can be imposed consistent with the plea agreement).  As noted above, Mr. Hinkle suffered through the very difficult jail conditions during COVID, and then upon his release on house arrest has done an incredible job of furthering his vocational skills and finding employment with the DPW.  He will likely lose the opportunity to pursue continued employment with the DPW if he is required to return to prison.  Thus, he humbly requests that the Court fashion a sentence under which he will not be designated to serve additional prison time in the BOP, and therefore will be able to continue his remarkable progress without the

---

[3]   The good-time credit for a 66 month sentence would be 297 days (5.5 years @ 54 days a year), which is nearly 10 months.  Thus service of 56 months in prison is roughly equivalent to a 66 month sentence.

setback of additional prison time.   Defendant is hoping that the Court agrees that such a sentence makes sense under the unusual circumstances in this case, and that such a sentence can be tailored consistent with the plea agreement in the case.   Mr. Hinkle acknowledges that the sentence must include 5 years of supervised release with 200 hours of community service and a period of home detention with the certain privileges, including for work and education.  Counsel urges the Court to find that a relatively short period of home detention is appropriate since Mr. Hinkle has already been on GPS/location monitoring for 18 months. Counsel also proposes that the community service be performed at a rate of 10 hours a month.

Alternatively, counsel requests that the Court sentence Mr. Hinkle to 72 months, and make a judicial recommendation to the BOP requesting that the defendant be allowed to serve the remaining months of his sentence (approximately 5 months) in home detention or in a community correctional facility with work privileges.  *See*, 18 U.S.C. 3624(c) ; *See also*, 18 U.S.C. 3621(b)(4) [BOP to consider any statement by the sentencing court concerning the purpose of the sentence and/or recommendation regarding the type of correctional facility] [4]

**THE RECOMMENDED SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY TO EFFECTUATE THE SENTENCING GOALS IN THIS CASE:**

**18 U.S.C. § 3553(a) FACTORS SUPPORT A TIME SERVED SENTENCE :**

Since United States v. Booker, 125 S.Ct. 738 (2005), courts must impose a sentence that is sufficient, but not greater than necessary, to satisfy the sentencing factors in the case, including the sentencing guidelines.  Pursuant to 18 U.S.C. § 3553(a), the Court, in determining the particular sentence to be imposed, must consider, *inter alia* -

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[4]   Under similar circumstances in other cases counsel has been permitted to draft a proposed letter to the BOP for the court to include with the Criminal Judgment.  If the Court agrees to make such a recommendation to the BOP, counsel is willing to provide a draft letter in word or word perfect format for the Court's consideration.

- 6 -

(2) the need for the sentence imposed:

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

The government recommended that the Court impose a 72 month sentence, followed by five years of supervised release, 12 months of home detention, and 200 hours of community service. While defense counsel generally agrees with the government's recommendation, the defense recommendation is slightly different, as undersigned counsel is trying to account for several factors not adequately considered when the plea agreement was negotiated about a year ago. First, counsel would point out, as Judge Sullivan noted when releasing Mr. Hinkle on "house arrest", Mr. Hinkle had a virtually unblemished institutional record during his 56 months in D.O.C. custody, a task that is not easy to accomplish. However, his positive rehabilitative adjustment since being placed on house arrest has been even more impressive, and speaks volumes about his attitude and commitment to change following his arrest in this case. As the Court has repeatedly heard, Mr. Hinkle has been 100% compliant with the very strict HISP and GPS/LM conditions of his house arrest.

Counsel would note that Mr. Hinkle has now been on a combination of house arrest, home detention, and pretrial GPS / Location Monitoring for 18 months. To his credit, after spending nearly 5 years in jail, he returned to the community with a level of motivation and focus that not many defendants show. The result has been a string of commendable achievements, which led to a very successful period of full-time employment. Mr. Hinkle initially set his sights on getting his CDL license, and promptly began taking the necessary steps to accomplish that

goal. First, he had to re-apply for his regular driver's permit and license, which he did.  Then, he studied for and obtained his CDL learner's permit.  Then he applied for, and was accepted into, a CDL training program through the United Planning Organization (UPO). [*See*, Exhibit 1 - UPO character letter] After completing the program, he passed the CDL test and obtained his CDL license.  And he did not stop there.  He then began applying for jobs, and was hired for a temporary full-time position with the Department of Public Works.  That position was scheduled to last at least until March 31, 2024, and there was a suggestion that he might be hired for a permanent position.  Although he received a nearly perfect evaluation, and his boss expressed an interest in finding him a position, the DPW budget did not permit them to hire him when his temporary position ended. [*See*, Exhibit 2 DPW Letter and Evaluation]    Nevertheless, he was encouraged to re-apply this summer when DPW begins accepting applications for positions in the fall.  It appears that he is considered a good candidate for permanent employment if any positions become available, and has been encouraged to continue to apply for positions with DPW.  [*See* Exhibit 2]  To his further credit, he did not hang his head. Instead, he immediately began applying for other employment and within days he was hired as a full-time delivery driver with BarBak Hospitality, a restaurant and food service distributor, where his currently working.

Mr. Hinkle was born and raised in the D.C. area.  He graduated from Eastern High School; took courses at the University of the District of Columbia; attended a six month telecommunications program; and prior to his arrest he had a history of employment with an automotive detailing company.  He has very strong family and community support in the area, as his mother, grandmother, aunts, cousins, and many other family members live and work in the D.C. area. [See, Exhibit 1 - Character Letter]   He has no juvenile adjudications,  no prior gun offenses, no history of violence, and two prior drug convictions which are each more than 20 years old.  His arrest and the nearly 56 months he spent in jail during the pendency of the case have been transformative. Given the opportunity, he accomplished a great deal, and he continues to be laser focused on successfully returning to the community.

– 8 –

Defendant acknowledges that guns and drugs are very serious. However, his involvement in this case occurred more than six years ago.  As the government acknowledges, there is no evidence that he ever used the guns recovered in this case.  He has no prior gun convictions or history of violence, his prior drug convictions are very dated, and significantly there are no signs that he is currently a risk to involve himself in any illegal activity.  In fact, everything he has done over the past six years suggests the opposite. Every day he continues to demonstrate by his actions that he has no interest in repeating past mistakes.    Finally, he has already served the equivalent of nearly a 66 month sentence. [5]   Thus, counsel submits that the nature of the offense does not tip the scales in favor of further prison time.

Moreover, it is important to note that while the government and defense recommendations are not far apart (about 5 months), there are very important differences in the sentencing results.  Under the government's recommended 72 month sentence, Mr. Hinkle would have to serve about 61 months before his mandatory release date ( factoring in 10.8 months of good-time credit).  That would mean that Mr. Hinkle will likely have to report to the BOP for up to 5 months additional prison time.  Such a result will cause him to lose his current job, and probably lose the opportunity to re-apply for DPW jobs since those applications are generally accepted during the summer.  Thus, the defendant is humbly requesting a sentence that will not cause him to return to prison, and will instead allow him to  immediately begin supervised release, with a period of home detention and other conditions. Such a result will keep him on his successful path without the setbacks additional prison time will cause. Most significantly, it will enable him to keep his current job and then re-apply for the DPW positions this summer when applications are being accepted by DPW.

---

[5]   Since a defendant is entitled to 54 days of good-time credit a year, a defendant serving a 66 month sentence would be entitled to 297 days or approximately 10 months of good time credit, and therefore the statutory release date for a 66 month sentence would be about 56 months.  Mr. Hinkle has served nearly 56 months.  Thus, factoring in good time credits, Mr. Hinkle has already served approximately the equivalent of a 66 month sentence, and that does not consider the fact that most inmates serving their sentences in the BOP get released to home detention or community confinement up to 6 months before their statutory release dates.

- 9 -

If the Court has discretion, the sentencing question in this case should boil down to whether the additional prison time is really necessary to effectuate the sentencing goals or whether the interests of justice are better served by fashioning a sentence that avoids the additional 5 month prison term ?   Considering Mr. Hinkle's successful employment with Department of Public Works and the real prospect of being re-hired by them this summer, his current employment with Bar-Bak, and his overall success as a hard-working, productive member of the community, it does not make sense to require him to return to jail or prison for a relatively short period of time, and then have to start over with employment, housing, and the other community re-entry issues.   Thus, counsel submits that fashioning a sentence that avoids the additional 5 month prison term better accomplishes the goals of sentencing in this case - both for Mr. Hinkle and the community. [6]  Such a sentence recognizes  Mr. Hinkle's extraordinary efforts at reformation and rehabilitation, and sends an extremely important message encouraging other  defendants to do the things that Mr. Hinkle has done to successfully put this chapter behind him.  In sum, considering Mr. Hinkle's background, history, and characteristics, and the other 3553(a) factors, especially his extraordinary post-offense adjustment in this case, counsel submits that the defendant's sentencing request makes a great deal of sense.  Further, if it can be accomplished, it would be sufficient to satisfy the goals of sentencing, and to provide just punishment and adequate deterrence, to reflect the seriousness of the offense, and to promote respect for the law.

**VARIANCE BASED ON CONDITIONS OF CONFINEMENT**:

In addition to the sentencing arguments above, counsel notes that the increased restrictions and policies due to the COVID-19 pandemic made the conditions for Mr. Hinkle far more punitive than for defendants prior to the pandemic.  Simply put, for about two and a half

---

[6]   Since it is clear that the BOP will not give Mr. Hinkle credit for his "house arrest" time, counsel suggests that perhaps the Court can credit 7 months of that time as part of the 72 month sentence (thus imposing 65 months rather than 72 months in the judgment).

years of Mr. Hinkle's detention, the conditions of confinement were unusually harsh and restrictive. Thus, counsel submits that this court should consider the conditions of confinement as a factor supporting a sentence at the bottom of the agreed-upon range. See, e.g., *United States v. Michael Cowan*, 18-cr-208 (ABJ) (suggesting that harsh conditions and limited opportunities is similar to the factors that warrant departures or variances for detained immigrants facing deportation); *United States v. Chris Carroll*, 20-cr-16 (JEB) (suggesting that it would be appropriate to give significant credit for a period of incarceration during the pandemic). In addition, counsel submits that this factor further supports a finding that additional prison time is not necessary or appropriate.


**CONCLUSION:**

Mr. Hinkle is now 46 years old, and recognizes that he is too old to repeat past mistakes. His positive adjustment and attitude over the past six years, demonstrates that his arrest and prosecution have had  the appropriate effect on him.  His determination and commitment to being compliant with court conditions, to becoming employable, and to finding and maintaining a job, is remarkable indeed. It shows that he is properly focused, and is not a risk to re-offend.

Mr. Hinkle has strong family support, particularly from the important women in his life - his mother, grandmother, and aunt.  Significantly, he also has a new "woman" in his life - a granddaughter who was born while he was in jail.  He is appreciating the joys of being a grandfather - something that is another positive factor in his efforts to succeed.  While he has made a few mistakes in his life, he continues to demonstrate every day that he is ready to put those mistakes and problems behind him.

Mr. Hinkle has already served a significant prison sentence, one that was made much more punitive by the difficult and restrictive conditions during COVID.  The parties reached an agreement which recognizes the relevant 3553 factors, and the unusual circumstances in this case.  The agreement also recognizes how well Mr. Hinkle responded to the trust the Court has

- 11 -

placed in him, especially his exemplary compliance with court conditions and his extraordinary accomplishments since being released on house arrest and home detention. Moreover, his conduct over the past 18 months has clearly demonstrated that his moral compass is now pointed in the right direction.

Accordingly, counsel submits that a sentence at the low end of the agreed-upon range (or below if possible) is both reasonable and appropriate.  Wherefore, under the unusual circumstances in this case, counsel urges the Court to grant the defense request for a sentence that allows him to continue building on his work and community successes, and does not require him to return to prison.  Mr. Hinkle will accept any other conditions the Court deems appropriate.

In the alternative, counsel urges the Court to impose the 72 month sentence, as recommended by the government, and include with the criminal judgment a  written judicial recommendation requesting that the BOP permit Mr. Hinkle to serve the remainder of his sentence in home confinement or in community confinement with work privileges.

Finally, counsel respectfully requests that the Court not impose a fine in this case, as Mr. Hinkle does not have the financial ability to pay a fine, and the imposition of a fine will be counter-productive to the goals of sentencing.

Respectfully submitted,

 /s/ *Howard B. Katzoff*
Howard B. Katzoff (Bar #348292)
717 D Street, N.W., Suite 310
Washington, DC 20004
(202) 783-6414
katzoffh@aol.com
Counsel for Ronald Hinkle

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this ___5th___ day of ___April___, 2024, a copy of the foregoing Sentencing Memorandum was filed via the Electronic Court Filing System ("ECF"), causing a copy to be served upon government counsel, and that a copy was electronically served upon United States Probation Officer Robert Walters.

 /s/ *Howard B. Katzoff*_____
Howard B. Katzoff